ATLANTIC SOUTHERN INSURANCE COMPANY, Plaintiff and Appellant, *v.* PABLO LÓPEZ CASTRO, Defendant and Appellee.

No. 12755. Decided September 21, 1962.

*Gutiérrez, Sánchez & Ramírez* and *Juan E. Serrallés III* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for appellee.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

The Atlantic Southern Insurance Company, a domestic insurance corporation, appealed from the judgment of the Superior Court, San Juan Part, which affirmed a decision by the Commissioner of Insurance of Puerto Rico, dated May 13, 1958, which suspended appellant's certificate of authorization to transact insurance for a period of fifteen days.

A statement of the facts revealed by the records of the case and which are of greater significance for the purposes of the present opinion is necessary. On October 9, 1952 Luis Cortés Díaz requested appellant, Atlantic Southern Insurance Co. of Puerto Rico, to issue a life-insurance policy for $500, with double indemnity in case of accidental death. The policy—the industrial insurance type which does not require a medical examination, but requires that the insured appears to be in good health—was issued on the 15th day of that same month, designating Estebanía Díaz, mother of the insured, as beneficiary.

The policy was effective until November 19, 1956, date in which it expired because the insured ceased paying the premiums. On January 11, 1957 the insured requested the renewal of the contract paying the sum of the unpaid premiums. On that same date, appellant's agent accepted the payment of the premiums giving the insured a receipt in which the payment was credited and it was stated that "under no circumstance will this be considered as a payment on the policy or on the renewal requested until the aforesaid request is approved by the company and a credit for the above-mentioned deposit has *(sic)* been actually entered in the receipt book by a duly authorized representative of the com-

pany. . . . The company does not incur any obligation whatsoever by reason of this deposit unless the applicant is alive and in good health on the date of the renewal."

On January 20, 1957 the insured was hit by an automobile and died the following day as a result of the injuries received in the aforesaid accident. On January 21, 1957, that is, the day after the accident, the insurance company approved the request for renewal.

Several days later, the beneficiary Estebanía Díaz, accompanied by several friends, went to the insurer's office where an agent or employee of the latter asked her for the policy, asking her besides to obtain the death certificate of the insured.

On February 6, 1957, the insurer wrote to the beneficiary informing her that the payment of the policy was denied because the insured was not in good health on the date of the renewal. The insurer attached to that letter a check for the sum of the expired premiums which the insured had paid to obtain the renewal requested.

Disagreeing with this action, the beneficiary Estebanía Díaz returned the check received and requested the insurer to return the policy. The insurance company refused to return the policy *because it believed that it belonged to the company.*

On May 7, 1957 the beneficiary filed a complaint to collect the policy, alleging that the latter was for $1,000 and that by virtue of the double indemnity she was entitled to $2,000.[1]

On June 6, 1957 the insurer agreed to pay the policy, but requested the beneficiary to sign a document stating that "I have desisted from engaging the services of Lic. Belén Trujillo, and neither he nor any other attorney shall intervene in

---

[1] The complaint remained so until May 21, 1957, when it was amended to reduce the sum claimed to $1,000.

my interests on this policy." On June 11, 1957 the policy was finally paid to the beneficiary, who was accompanied by her lawyer at the request of the insurance company. The complaint in court was abandoned by stipulation.

Before the policy was paid and by advice of her attorney, the beneficiary had gone to the office of the Superintendent of Insurance in relation with her controversy with the insurance company. The beneficiary's complaint brought forth an investigation and the intervention of José H. Cora, an employee of the Superintendent's Office, who wrote to the president of the insurance company, informing him that "they had not paid in this case because the lady had engaged the services of a lawyer and they did not like to deal with lawyers."

Sometime before October 1957,[2] the insurance company complained to the Commissioner of Insurance of the statements made by that office's employee, José H. Cora, to persons related with the company in the sense that the latter "did not handle claims as it should." Appellant's complaint led to an investigation in charge of Víctor A. Quiñones, an employee at the office of the Superintendent of Insurance. On October 9, 1957, Estebanía Díaz made a sworn statement before the Commissioner in which she related some of the facts respecting her claim as beneficiary of the life insurance policy of the industrial type referred to in the above-mentioned facts.[3]

Both complaints were taken care of by the Superintendent of Insurance who ordered an investigation. As a result of that investigation a report was rendered (Plaintiff's Exhibit 6) from which it transpired that the insurance company "unduly denied and unnecessarily delayed the payment" of the benefits of the policy No. WE-100000.

---

[2] Apparently appellant can not give us the date in which it complained to the Commissioner of Insurance.

[3] Appellant suggests that the administrative action was caused by its complaint of the actions of the official, Mr. Cora.

As a result of all this, the Superintendent of Insurance ordered the holding of a hearing on March 14, 1958.

As a result of the hearing, the Superintendent decided that:

(a) The insured was covered at the time of the accident.

(b) The insurance company illegally denied the payment of the claim made by the complainant.

(c) In communicating the general agent Luhn to Cora that the company had not paid the complainant because the latter had engaged the services of an attorney; in making the complainant sign a document in which she desisted from engaging the services of Lic. Belén Trujillo, binding herself not to engage the services of any other attorney, and in failing to return the documents belonging to the complainant, the insurance company Atlantic Southern Insurance Co. of Puerto Rico acted incompetently and in violation of the Insurance Law of 1921, 26 L.P.R.A. § 70(6).

In view of his conclusions of law, the Superintendent of Insurance suspended the certificate of authority conferred to the insurance company for the term of fifteen days, plus twenty-five dollars for the preparation of the record of the hearing which was held.

From this decision the Atlantic Southern Insurance Co. of Puerto Rico appealed to the Superior Court, San Juan Part, which, as we stated, affirmed the decision of the Commissioner of Insurance.

In its brief appellant assigns, two errors. It alleges in the first one that the superior court erred in determining that the notice of hearing which initiated the administrative proceeding was sufficient, and that it also erred in determining that the order given by the Commissioner was supported by the evidence introduced in the administrative hearing.

In our opinion, neither error was committed. Let us see.

## I

In the first place, appellant contends as to the first error that the notice of hearing was insufficient to permit the Superintendent to issue the order appealed from, since, as to the charges stated in said document—having unduly refused payment of the policy and having unnecessarily delayed the aforesaid payment—the first one can not be taken seriously because it is evident that the policy was paid on June 11, 1957, long before the complaint was filed; and the suspension ordered by the Superintendent could not be based on the delay charged in the second, because there is no finding of fact whatsoever by the Commissioner to the effect that the company incurred censurable delay in the payment of the policy.

It also argues that the Commissioner's decision and his sentence were based on that:

1. Appellant's general agent informed an official of the office of the Superintendent of Insurance that the Atlantic Southern Insurance Co. "had not paid the complainant because the latter had engaged the services of an attorney";

2. The Atlantic Southern Ins. Co. made the complainant sign a document in which she desisted from engaging the services of her attorney and bound herself not to engage another; and

3. Appellant had refused to return to the claimant the documents of the policy after originally denying her the insurance claim;

4. The illegal denial of the payment of the policy (although it was paid before the filing of the complaint).

Appellant further argues, that even assuming for the moment that there was ground in the administrative record to justify the findings of fact, it is evident that appellant was found guilty for irregularities different from those charged in the complaint; that this is so, since the only

charge in the complaint was the unnecessary delay in the payment; that such a severe penalty was not justified on the basis of irregularities that were found proven which the company was not prepared to refute and of which it was not even advised; that the trial judge decided this question by determining that it was not necessary to pass on the sufficiency of the notice of hearing but that it was sufficient that respondent appeared at the hearing represented by two competent attorneys in which the latter did not request a bill of particulars nor object to the unexpected evidence on which the Commissioner based his conclusion; that this last indication of the trial judge is slightly less than naive, since there was no bill of particulars whatsoever to be requested respecting a complaint which clearly and unmistakably only alleged unnecessary delay; that it did not object to the evidence on which the Commissioner based its conclusion *because such evidence was not likely to be contested successfully since it was admissible for the purpose of trying to prove the unnecessary delay which was being assigned to appellant;* that the trial judge's citation from the DAVIS treatise, Administrative Law 278–280, § 80 (1951), is immaterial to the question involved in this case since it concerns that issue which is not discussed at present that the pleadings in an administrative proceeding do not have to include the bill of particulars generally required in the allegations in a judicial proceeding and that what the authorities cited in the above-mentioned section decides, is that a vague complaint, very often couched in broad terms of the language of a statute, without a bill of particulars, is sufficient to support concrete findings of fact if the respondent was really and actually informed of the facts and had the opportunity to come to deal with them.[4] Appellant,

---

[4] According to appellant, applying this rule to the case at bar, the complaint would have been adequate if appellant would have been merely charged with "having incurred incompetency in the transaction of the claim of Estebanía Díaz for the collection of the policy which insured the life of Luis Cortés Díaz." That is, the language of 26 L.P.R.A. § 70(6).

in support of its contention that it has a right to be informed in advance of the charges assigned, cited the following cases: *National Labor Relations Board* v. *Kanmak Mills, Inc.*, 200 F.2d 542; *N.L.R.B.* v. *Bradley Wash Foundation Co.*, 192 F.2d 144; *cf. N.L.R.B.* v. *Sands Manufacturing Co.*, 306 U.S. 332; *Consolidated Edison* v. *N.L.R.B.*, 305 U.S. 197.

 As to the sufficiency of the pleadings in the administrative process, see I DAVIS, Administrative Law Treatise 525, § 8.04 (1958):

"The key to pleading in the administrative process is nothing more than opportunity to prepare. Pleading is only one of many ways of providing opportunity to prepare. Deficiencies in a pleading may be cured by informal communication, by formal amendment, by a bill of particulars, by pre-hearing conferences, or by ample continuances at the hearing. *And the question on review is not the adequacy of the original notice or pleading but is the fairness of the whole procedure.*" (Italics ours.)

And on p. 526 it is stated:

"In many cases failure to object or to request a bill of particulars is the basis for refusing to set aside orders. *Failure to request a continuance may constitute a waiver of a defective notice.*" (Italics ours.)

And on p. 530 of the same volume, § 8.05, it is added:

"Although, as we have seen in the preceding section, *the key to pleading and notice in the administrative process is adequate opportunity to prepare,* and although inadequacy of notice is usually cured in at least one of many ways, some cases still turn upon the adequacy of notice." (Italics ours.)

In the case at bar a notice of hearing was sent to respondent on February 28, 1958, the second Whereas of which reads as follows:

"WHEREAS, from the investigation conducted by this office it is inferred that respondent, Atlantic Southern Insurance Co.

*unduly denied and unnecessarily delayed the payment of the benefits arising from the above-mentioned insurance."* (Italics ours.)

■ The notice of hearing fixed the date for said hearing on March 14, 1958, which gave respondent 14 days to make all the necessary investigations or to request a bill of particulars, extensions, or any other of those measures listed by DAVIS in his above-mentioned treatise. Respondent appeared at the hearing represented by its two attorneys, Lic. Elí B. Arroyo and Lic. Celestino Morales, Jr.; they never requested a continuance; they freely cross-examined complainant's witnesses; they did not introduce any evidence whatsoever, and did not object to the one introduced. Respondent's present attorneys admit that the evidence introduced by complainant therein was not opposed "for the simple reason that such evidence was not susceptible to be contested successfully since it was admissible for the purpose of trying to prove the unnecessary delay with which appellant was charged."

■ This hearing was held on March 14, 1958 and did not end until March 19 of that same year. Any imperfection or any vagueness which might exist in the notice of hearing was cured when respondent learned about the charges made against it from the first day.

From an examination of the notice of hearing it transpires that two charges are assigned to respondent, namely:

A. Unduly refusing to pay the benefits of the policy, and

B. Unnecessarily delaying the payment of the benefits of said policy.

Although no finding of fact whatsoever was made to the effect that defendant was guilty of censurable delay in the payment of the policy, the following findings, among others, were actually made:

1. That on January 21, 1957 defendant reinstalled the policy No. WE–100000;

2. That the insured died on January 21, 1957;

3. That the beneficiary contacted the insurer in order to receive the benefits of the policy;

4. That defendant later returned to the beneficiary the amount of the premium paid for the reinstatement of policy No. WE–100000;

5. That the complainant requested the return of the policy and this was denied by the Company;

6. That complainant appeared at the office of the Commissioner of Insurance and conferred with José H. Cora;

7. That José H. Cora called Luhn, the company's general agent;

8. That the company's general agent, Mr. Luhn, informed Cora that they had not paid this case because the lady had engaged the services of an attorney;

9. That on June 6, 1957 the complainant signed in respondent's office a document by which she desisted from engaging the services of her own attorney and promised not to engage another one;

10. That on June 11, 1957 the complainant abandoned her complaint before the district court, and on that same date the company paid complainant the sum of $500 and an additional sum of $500 as compensation for accidental death.

From all these findings of fact, fully supported by the evidence, it may be inferred that the insurance company denied the payment of policy No. WE–100000 without any justification whatsoever, which is one of the charges made against it and of which it had sufficient notice because it was included in the second Whereas of the notice of hearing.

The cases cited by appellant are not applicable to the case at bar because the situation of facts is completely different.

In *N.L.R.B.* v. *Kanmak Mills, Inc.*, 200 F.2d 542, an employer was charged with firing an employee on the grounds that the latter had participated in union activities. At the trial, respondent's general manager testified he had offered to

reinstate the complaining employee in her job if she withdrew the complaint filed before the Board. The Board decided that there was nothing in the record which would justify a decision to the effect that the firing was due to the employee's union activities, but that the record did show that the firing was due to the complaint filed by the employee, which in turn, established a disloyal practice.

The Court of Appeals for the Third Circuit reversed the judgment of the Board, stating that no opportunity had been given respondent to answer this new charge.

Of the cases cited the only one applicable to the case at bar is *Edison* v. *Labor Board*, 305 U.S. 197, in which one of the issues discussed is the sufficiency of the evidence to support the findings of the Board. The court stated:

"The companies contend that the Court of Appeals misconceived its power to review the findings and, instead of searching the record to see if they were sustained by 'substantial' evidence, merely considered whether the record was 'wholly barren of evidence' to support them. We agree that the statute, in providing that 'the findings of the Board as to the facts, if supported by evidence, shall be conclusive,' means supported by substantial evidence. (Cases) . . . . . *It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."* (Italics ours.)

The findings made by the Commissioner and ratified by the trial court are fully supported by the evidence in all its particulars.[5]

## II

As to the second error which concerns the lack of support in the evidence to uphold the Commissioner's order, appellant divides its argument in three parts:

---

[5] Appellant admits that there is no excuse to justify the undue retention of the policy nor to impose as a condition to the beneficiary the waiver of legal counsel (contrary to 26 L.P.R.A. § 1074), that is, § 175 of Act No. 66 of July 16, 1921. Appellant itself has doubts concerning its power or ability to offer "credible and convincing evidence." (Appellant's brief at p. 12.)

(a) the retention of the policy; (b) interpretation given by the court to the document waiving legal counsel, and (c) credit given to the testimony of José H. Cora.

(a) *The retention of the policy:*

Appellant states that if it is assumed that the policy was not enforceable and that this was plausible, it is perfectly logical that this meant or implied that the policy belonged to it.

██ We fail to see any reason for appellant's contention on this point. An insurance policy belongs to the insurer and once the latter dies it becomes the property of the beneficiary. *Cf. Espósito* v. *Guzmán,* 45 P.R.R. 771; *González* v. *De la Guerra,* 46 P.R.R. 256, 268.

The insurance policy is the best proof of the right of the insurer or of the beneficiary to claim the insurance. In this case in particular, the beneficiary could not explain to her attorney the conditions of the contract nor the amount of the insurance because she did not have the policy in her power. The attorney was thus bound to file a complaint which later had to be amended because the beneficiary could not give him the policy which the company unduly retained.

(b) *Interpretation given by the Court to the document waiving legal counsel:*

The Commissioner decided that appellant was guilty of incompetency "in making . . . complainant sign a document in which she desisted from engaging the services of Lic. Belén Trujillo, binding herself not to engage the services of any other attorney in her claim."

Appellant itself contends *that the aforesaid conclusion of the Commissioner on that particular is supported by the evidence;* [6] that the document was introduced in evidence and its legitimacy was not challenged by appellant.

---

[6] See appellant's brief at p. 13.

### (c) *Credit given to the testimony of José H. Cora:*

Appellant argues that the Commissioner found proved that appellant was incompetent "in communicating the general agent Luhn to Mr. Cora that the company had not paid the complainant because the latter had engaged the services of an attorney," and that this statement is not found in the testimony of any one of the witnesses who testified at the hearing, but is found in the report of Víctor Quiñones (Exhibit 6), and that even if it is true that the report in question was admitted in evidence without objection on appellant's part, the evidence in question should not have received credit from the Commissioner.

■ On appeal it now alleges that there is involved an evident "double hearsay" since it was José H. Cora who made this statement to Víctor Quiñones; that Mr. Cora was under investigation; that it was convenient for Mr. Cora to "disgrace" the insurance company's conduct so as to be able to justify his own conduct.

The assignment is frivolous. All the findings of the trial judge are fully supported by the evidence.

As to the allegation that no credit should have been given to the statements of José H. Cora because it involved an evident "double hearsay," appellant at no time objected to its introduction. This Court has repeatedly stated that the objections which lie against the admission of evidence should have been introduced in the trial court and should not be introduced for the first time on appeal. *Clabaguera* v. *Espéndez,* 61 P.R.R. 667; *People* v. *García,* 48 P.R.R. 433.

The judgment appealed from will be affirmed.